## FRANCIS BARING *et al. versus* FERDINAND CLARK.

The acceptor of a bill of exchange for the honor of the drawer, cannot maintain an action thereon against him, without proof of its presentment to the drawee, and non-acceptance or non-payment by him, and notice thereof to the drawer.

The agent in Boston, of the plaintiffs, who were bankers in London, wrote to the defendant in Havana, stating that F. & Co. wished to have funds drawn from London in anticipation of a shipment to be made for their account at Havana, and authorizing the defendant to draw on the plaintiffs, it being " understood, that in making the shipment, you will consign the property shipped under this credit, to the order of " the plaintiffs. The defendant accordingly drew on the plaintiffs, but, upon the failure of F. & Co., applied the proceeds of the bills to the credit of F. & Co. in their general account with him. It was *held*, that the defendant was bound to comply with the conditions of the letter of credit, in regard to the disposition of such proceeds ; and that the plaintiffs were entitled to recover of him the amount thereof, in an action for money had and received, without any previous special demand.

The declarations of an agent while acting and speaking for the principal and within the scope of his authority, are admissible in evidence against the principal, notwithstanding he is a competent witness.

The possession of a bill of exchange by the acceptor, after it has been in circulation. is *primà facie* evidence that it has been paid by him.

ASSUMPSIT. The declaration contained the common money counts, and also two special counts.

The first special count set forth, that, on the 6th of December, 1833, it was agreed, that the defendant should draw bills of exchange, at Havana, on the plaintiffs, in London, for a sum not exceeding £ 3000, and with the proceeds of such bills, purchase certain merchandise at Havana for the account P. & C. Flint & Co., who were merchants in Boston, and ship it to St. Petersburg, consigned to the order of the plaintiffs ; that the defendant accordingly drew on the plaintiffs and the bills were duly honored and paid by them ; but that the defendant had appropriated the money received by him from the sale thereof, to his own use.

The second special count set forth, that P. & C. Flint & Co. being disposed to employ the defendant to purchase a quantity of merchandise for them, at Havana, to be shipped, for their account, to St. Petersburg, the defendant, in consideration that the plaintiffs would, for the purpose of enabling him to raise money to purchase such merchandise, permit him to draw on them for the sum of £ 3000, payable in London,

promised the pliantiffs that he would expend the money which he should receive by virtue of the sale thereof, in purchasing merchandise for the use of P. & C. Flint & Co. and would ship the same at Havana to St. Petersburg, consigned to the order of the plaintiffs ; that the defendant accordingly drew on the plaintiffs, and the bills had been, upon presentment, duly honored and paid by the plaintiffs ; and that the defendant had appropriated the money received by him from the sale of the bills, to his own use.

At the trial, before *Wilde* J., the plaintiffs produced in evidence a letter, dated December 6th, 1833, from T. W. Ward, the accredited agent and attorney of the plaintiffs in Boston, addressed to the defendant at Havana, as follows : — " Our respected friends, Messrs. P. & C. Flint & Co., inform me, that they intend to load in part a vessel at Havana for St. Petersburg, and wish to have funds drawn from London in anticipation of the shipment of the cargo. For this purpose you are hereby authorized to value on Messrs. Baring, Brothers, & Co., London, at sixty days, at Havana, for account of Messrs. P. & C. Flint & Co. to the extent of £3000 sterling ; and your bills will be duly honored on presentation, if drawn within four months from this date. It is understood, that in making the shipment you will consign the property shipped under this credit to the order of Messrs. Baring, Brothers, & Co. of London."

The plaintiffs also introduced six bills of exchange, amounting, in the whole, to the sum of £3010, drawn at Havana, upon the plaintiffs, by James Norman as agent of the defendant. Five of these bills were accepted by the plaintiffs for the honor of the drawer ; the sixth was accepted in the usual form. It did not appear, that any of them had been protested for non-acceptance or non-payment.

The defendant objected to the reading in evidence, of the bills which were accepted for the honor of the drawer, until they were proved to have been protested for non-acceptance or non-payment ; but the judge overruled the objection.

There was no evidence of the payment of these bills by the plaintiffs, except their possession of them. The judge ruled that the possession was evidence of payment by the plaintiffs,

19*

to be submitted to the jury, although there was no other evidence of payment.

The plaintiffs also offered in evidence a letter from Norman to them, dated February 4th, 1834, advising them of his having drawn such bills under the letter of credit.

The deposition of Edward Fesser was produced in evidence, who testified, that at an interview with Norman in the spring of 1834, in relation to the claim of the plaintiffs on the defendant, the witness asked him if he was ready to fulfil the conditions of the letter of credit; that Norman replied, that he could not, as he had given credit to P. & C. Flint & Co. for the proceeds of the bills; that by an order from them, in consequence of their failure, the defendant was, instead of shipping the sugar for their account, to have protected the plaintiffs, since the sugars could not be shipped for a house that had failed; that the witness asked Norman if he was ready to do this, but he replied that he could not do it, in consequence of orders from the defendant, who was then in the United States; and that this conversation was had with Norman, at the request of George Knight; who, it was testified, had a special power of attorney from Ward, to act on the behalf of the plaintiffs in regard to their claim upon the defendant. The judge ruled that the whole of Fesser's deposition was admissible in evidence, and that the defendant was bound by the statement of Norman as set forth therein.

It was admitted, that the plaintiffs were bankers and commission merchants in London; that the defendant was a commission merchant in Havana; and that P. & C. Flint & Co. stopped payment in February 1834.

The judge ruled, that the defendant was bound to apply the proceeds of the bills to the purchase of merchandise to be consigned to the order of the plaintiffs. To this ruling the defendant objected.

The defendant also objected, that the evidence did not support the special counts or either of them; but the judge ruled, that it was competent to support either of them.

A verdict was taken for the plaintiffs, subject to the opinion of the whole Court.

*June 13th.*     *S. Hubbard, H. H. Fuller* and *Washburn*, for the defend-

ant, to the point, that the plaintiffs were bound to accept the
bills as drawees, and could not change the relation in which
they stood to them by accepting merely for the honor of the
drawer, cited *Schimmelpennick* v. *Bayard*, 1 Peters, 264 ;
that the legal presumption was, that the plaintiffs had funds of
the drawer in their hands, and so the mere production of the
bills did not sustain the action, Bayley on Bills, (2d Am.
ed.) 193, 343 ; that the plaintiffs were not entitled to recover
as acceptors for the honor of the drawer, the bills not having
been first protested for non-acceptance or non-payment, Chitty
on Bills, 310, 311, 313 ; Bayley on Bills, (2d Am. ed.)
160 ; *Scofield* v. *Bayard*, 3 Wendell, 488 ; *Schimmelpen-
nick* v. *Bayard*, 1 Peters, 264 ; *Konig* v. *Bayard*, 1 Peters,
250 ; that the declarations of Norman were not part of the
*res gestœ*, and so were not admissible, Norman himself being a
competent witness, *Leeds* v. *Marine Ins. Co.* 2 Wheaton,
380 ; *Fairlie* v. *Hastings*, 10 Ves. 123 ; *Baker* v. *Briggs*,
8 Pick. 127 ; Phil. on Ev. (N. York ed. 1823,) 77, 78, 79 ;
and that in order to support the count for money had and re-
ceived, there should have been a demand of payment made on
the defendant in Havana, before this action was commenced.
*Clark* v. *Moody*, 17 Mass. R. 145 ; *Ferris* v. *Paris*, 10
Johns. R. 285.

*J. Mason* and *C. P. Curtis*, for the plaintiffs, to the point,
that this was a close, conditional credit, and the money receiv-
ed by virtue of it not having been appropriated by the defend-
ant in conformity with its conditions, the plaintiffs were entitled
to recover the amount of the defendant, under the money
counts, cited *Scott* v. *Surman*, Willes, 404 ; Chitty on Bills,
(8th ed.) 82 ; *Hall* v. *Marston*, 17 Mass. R. 575 ; that the
promise of the plaintiffs to accept, contained in the letter of
credit, was equivalent to an immediate acceptance, Bayley on
Bills, 168 ; *Coolidge* v. *Payson*, 2 Wheaton, 66 ; that the
possession of the bills by the plaintiffs was *primâ facie* evidence
of their payment by them, it appearing that the bills had been
in circulation, 3 Stark. Ev. (4th Am. ed.) 1090, 1091 ;
*Dugan* v. *United States*, 3 Wheaton, 183 ; *Gibbon* v. *Feath-
erstonhaugh*, 1 Stark. R. 225 ; *Bell* v. *Norwood*, 7 Louisiana
R. 95 ; *Brembridge* v. *Osborne*, 1 Stark. R. 374 ; *Picquet*

v. *Curtis*, 1 Sumner, 478 ; *Hughes* v. *Hind*, 1 Wright's (Ohio) R. 650 ; *Wilson* v. *Goodings*, 1 Wright's (Ohio) R. 219 ; that the declarations of Norman were admissible in evidence, as being a part of the *res gestæ*, and also as being the declarations of an agent acting on behalf of his principal, and within the scope of his authority, 2 Stark. Ev. 57, 60, 61 ; *Welsh* v. *Carter*, 1 Wendell, 185 ; *Clifford* v. *Burton*, 1 Bingh. 199 ; *Anderson* v. *Sanderson*, 2 Stark. R. 204 ; *S. C.* 1 Holt, 591 ; *Ashford* v. *Price*, 3 Stark. R. 185 ; *Ashbourne* v. *Price*, 1 Dowling & Ryl. N. P. 48 ; *Garth* v. *Howard*, 8 Bingh. 451 : *Shumack* v. *Lock*, 10 J. B. Moore, 39 ; that the defendant not having performed the contract on his part, the plaintiffs had a right to rescind it, and to bring this action, *Griggs* v. *Austin*, 3 Pick. 20 ; *Moses* v. *Macferlan*, 2 Burr. 1005 ; *Giles* v. *Edwards*, 7 T. R. 181 ; *Tuttle* v. *Mayo*, 7 Johns. R. 132 ; *Moore* v. *Hitchcock*, 4 Wendell, 292 ; and that no demand was necessary, *Langley* v. *Sturtevant*, 7 Pick. 214.

*July 1st.*     PUTNAM J. delivered the opinion of the Court. It is very clear, that the plaintiffs cannot recover on the special counts. The party who pays a bill for the honor of the drawer, must pay supra protest. There must be proof of presentation to the drawee, non-acceptance or non-payment by him, and notice to the drawer. But no such evidence exists in this case.

We have decided the cause upon the general count for money had and received.

And the right of the plaintiff to recover depends essentially upon the true intent and meaning of the letter of credit of T. W. Ward, the attorney of the plaintiffs, to the defendant, dated December 6th, 1833. The plaintiffs contend, that this was a close, limited or conditional credit, and that the money, which the defendant received upon or in virtue of the same, not having been applied to the purchase of a cargo for the account of the Messrs. Flint, and consigned to the order of the plaintiffs, but on the contrary, having been applied to the general credit of Messrs. Flint, in violation of the agreement, the plaintiffs have a right to recover back the money which the defendant received upon the sale of his bills of exchange upon them.

This is one of the most common mercantile negotiations; and we can hardly conceive that any difference of opinion can exist as to its true construction. It is, we think, manifest, that the credit which was given for the accommodation of Messrs. Flint, was, upon strict terms, that the money to be raised by the plaintiffs' acceptances, should be invested by the defendant, (who as to that matter was the agent of the plaintiffs as well as of Messrs. Flint,) in a cargo which should be shipped to the order of the plaintiffs. The plaintiffs did not intend to give an open credit to Messrs. Flint, or to the defendant. They gave no authority to Messrs. Flint, to draw upon the plaintiffs. They engaged to accept bills to be drawn by the defendant, for the purposes set forth in the letter of credit, and not otherwise.

But the defendant has violated the agreement, and he contends that, inasmuch as Messrs. Flint have failed and become bankrupts, he has a right to appropriate the money by giving Messrs. Flint credit for it, to the end that it shall be distributed among their creditors in the settlement of their insolvent estate. A mere statement of the case seems to us to present a strong refutation of the claim of the defendant.

It is contended for the defendant, that he had a right to credit the money to the account of Messrs. Flint, that it was received upon their account, and that it was his duty to credit their account for the same. This may be admitted to be true in some sense. It should have been credited to the particular account of this adventure, and not to their general account, so as to give them an unlimited control over the money, and enable them to take it to pay their old debts, instead of investing it in a cargo to be consigned to the order of the plaintiffs. The defendant should have inserted the letter of credit in his books; and the money received and the investments made according to its provisions, should have been referred by some appropriate title to that contract. But it is very clear, that the defendant had no right to pay over the money to Messrs. Flint, or, which would be the same thing so far as relates to the plaintiffs, to give the Flints a credit in their general account with the defendant. Such a disposition of the money would be a misappropriation of it; and upon proof of such misap-

propriation, an action would lie for the plaintiffs to recover it back, without any special demand. And such misappropriation is sufficiently proved by the evidence in the case, particularly by the deposition of Fesser, and the confessions of Norman, the accredited agent of the defendant.

It has been contended, however, that the deposition of Fesser was not competent to show the confessions of Norman, the defendant's agent. It is said for the defendant, that Norman, himself, might be called as a witness, and that his declarations could not be given in evidence against the defendant. The relative situation of the parties should be stated in order to the right understanding and determining of these objections. The plaintiffs are bankers and commission merchants of London, having Ward their accredited agent and attorney in Boston. The defendant was a commission merchant, at Havana, having an accredited agent there, (while he, the defendant, was absent,) whose confessions were attempted to be proved by the evidence of Fesser. Fesser was at Havana, and, on behalf of the plaintiffs, inquired of Norman whether he would apply the proceeds which he acknowledged to have received, of the drafts on the plaintiffs, according to the terms of the letter of credit, so as to cover the claim of the plaintiffs; which Norman refused to do, for the reason that Messrs. Flint had failed, and that the defendant (as Norman said) had given credit to them for the money received upon the drafts. It is proved that Ward approved of the conduct of Fesser, after he was made acquainted with it, and thanked him for what he had done. So the acts and doings of Fesser are good by adoption. And the plaintiffs were under no necessity to put Norman upon the stand as a witness; for he was acting and speaking for the defendant under and within the general scope of his authority; and his confessions and declarations were to be taken as if they had been made by the defendant himself. The drafts which the plaintiffs produce, were drawn by Norman, by procuration of the defendant; and he sold the bills at an advance, and received the money for the same, as appears by his letter of advice in February 1834. The facts before stated are thus legally proved.

There is one other objection which has been raised, though

not much relied upon, which it is proper to notice. It was contended for the defendant, that the plaintiffs do not prove that they have paid the bills, that the presumption is, that the acceptor pays from the funds of the drawer in his hands. Now if such be the presumption of the law, it is rebutted by the evidence in the case ; for Norman, the agent of the defendant, acknowledges in his letter of advice, that the bills were drawn against the letter of credit. But the proof is, that these bills have been put in circulation, that the defendant has received the proceeds of them. The possession of them by the plaintiffs is surely *primâ facie* evidence that they have paid the contents. We think this objection, in the absence of any evidence to rebut the presumption of payment, from the plaintiffs' being in possession of a bill which has been in circulation, cannot prevail.

The plaintiffs' right of action accrued at the time when the defendant misapplied the money received for the plaintiffs' acceptances. The plaintiffs became liable to pay any *bonâ fide* holder the amount of the bills drawn by the defendant. The money was received for a particular purpose, but applied to another wrongfully. The plaintiffs furnished the money, or the means of raising it, to the defendant ; and their right to recover it back was perfect, when the defendant declared his intent to Fesser, not to apply it according to the terms of the letter of credit, but to give credit for the same to the account of Messrs. Flint.

We are all of opinion, that the plaintiffs are entitled to recover on the general count for money had and received ; and that the damages should be the amount which the defendant received for the bills in February 1834, including the principal and the premium of exchange, with interest from the time when the defendant misappropriated the funds by crediting the same to the account of Messrs. Flint.